UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10377-NG |
| | ) | |
| Fredy Zapata-Soto | ) | |

DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER

Defendant, Fredy Zapata-Soto moves, pursuant to 18 U.S.C. § 3145(b), that the District Court revoke the order detaining him. See Order of Detention ("Order"), docket entry #8 (Exhibit A). As grounds for this motion, defendant states that there are conditions that would reasonably assure that he will appear in court.

STATEMENT OF FACTS

Defendant is 38 years old and a native of the Dominican Republic. Before being placed in custody for this matter, he had worked for a number of different Spanish-American markets or "bodegas" in the Lawrence, Massachusetts area.

Mr. Zapata-Soto is charged in a single indictment with illegal re-entry after deportation. At the detention hearing, the government indicated that Mr. Zapata-Soto was deported in 1994. The guideline range for the illegal re-entry charge – even after trial – is 0 to 6 months.[1]

---

[1] The base offense level under U.S.C.G. § 2L1.2 is 8. As all parties agree that the defendant's prior record does not contain an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43)(O), the requisite 8 level enhancement is unnecessary here. With a base offense level of 8, after trial,

Mrs. Ana Rivera is the defendant's sister-in-law and she lives at 37 Oliver Street, Apt. 2, in Methuen, Massachusetts. She is a legal permanent resident of the United States and is living at the address in Methuen with her two children. Mrs. Rivera has agreed to act as a Third Party Custodian for Mr. Zapata-Soto.

ARGUMENT

As stated, Mr. Zapata-Soto faces a guideline range of 0-6 months on the illegal re-entry charge. He has a relatively minor criminal record. The defendant was indicted by the government under the faulty assumption that he did have the requisite prior conviction(s) to elevate him to the status of aggravated felon. When this case began, predecessor counsel of record had advised the defendant regarding the detention issue based on this same assumption and he ultimately elected to assent to detention. At the time that the defendant made this decision, predecessor counsel did not have the benefit of having thoroughly reviewed the entire immigration file and other discovery materials that were provided by the government at a later date.

Defense counsel's recent review of the immigration file, as well as consultation with predecessor counsel, have revealed that

---

the guideline range would be 0-6 months. A plea, which would result in a 3 level reduction for acceptance of responsibility, would not further reduce this suggested sentence.

the prior conviction that the government relied on to categorize
the defendant as an aggravated felon was ultimately a plea to a
misdemeanor.  When confronted with this information, Assistant
United States Attorney Nadine Pellegrini conceded, after
reviewing the material herself, that the defendant was not an
aggravated felon.  As result of this confusion concerning the
defendant's prior conviction, as well as the re-assignment of the
case within the Federal Defender Office, Mr. Zapata-Soto has been
in custody for over ten months, four months more than his
suggested guideline sentence for this offense.

In addition, although defense counsel has not had an
opportunity to research the issue fully, it appears that a viable
motion to dismiss this indictment could be brought by the
defendant in this case.  An indictment brought under 8 U.S.C.
§ 1326 must be dismissed where a defendant has been deprived of
his right to effective judicial review of the deportation order
that underlies the prosecution.  See United States v. Mendoza-
Lopez, 481 U.S. 828, 841 (1987).

In 1991, Mr. Zapata-Soto was ordered deported, in absentia,
because he did not appear for his scheduled deportation hearing.
See Decision Of The Immigration Judge (Exhibit B).  A review of
the immigration file indicates that he did not appear because he
was never served with proper notice of the date and time of the
proceeding.

A proper resolution of this issue requires a thorough review of Mr. Zapata Soto's immigration file and the records of his deportation hearing.  Ultimately, it would be an optimistic guess, given the Court's busy schedule and the time necessary to research and generate motions and competing briefs, that a hearing on this issue could take place within six to eight weeks. Given the sentencing range for this case, Mr. Zapata-Soto is likely to have served double the guideline recommended sentence in this case by the time the motion to dismiss is finally heard and ruled on if he is not released on conditions.

Finally, in response to Mr. Zapata-Soto's request for release on conditions, the government will undoubtedly argue that if the request is granted, he will be lost to Immigration and Customs Enforcement ("ICE") custody and that he will be deported in short order before this prosecution is resolved.  This would be pure speculation on the government's part and prior cases demonstrate that it is reasonable to expect that he could be released under these circumstances.  In United States v. Michel Ange-Aspilaire, Criminal No. 02-10105-WGY, a Logan Airport worker whose prior order of deportation had been reinstated, see Exhibit B, was released by this Court, then by Immigration, see Exhibit C.  Furthermore, in United States v. Dario Arango Berrios, Criminal No. 00-10396-GAO, a defendant charged with illegal re-

entry, after having been convicted of an aggravated felony, was released on conditions.

Moreover, the Court should not be overly concerned with suggestions that the prosecution of this case will abruptly end if "ICE" intervenes. Any disputes concerning a continued prosecution of this case versus deportation proceedings should properly be resolved by the Department of Justice and "ICE", two Executive Branch entities. <u>See</u> Transcript of hearing before Justice Young in <u>United States v. Rodas Alvarado</u>, Criminal No. 04-10191-WGY (Exhibit C).

For the reasons set forth above, defendant respectfully requests that he be released on whatever conditions the District Court deems appropriate.

REQUEST FOR HEARING

Defendant requests a hearing on this motion.

                              FREDY ZAPATA-SOTO
                              By his attorney,

                              /s/ Oscar Cruz, Jr.

                              Oscar Cruz, Jr.
                                B.B.O. # 630813
                              Federal Defender Office
                              408 Atlantic Ave. 3rd Floor
                              Boston, MA  02110
                              Tel: 617-223-8061

-5-

## CERTIFICATE OF SERVICE

I, Oscar Cruz, Jr., hereby certify that a true copy of the above document was served upon Assistant United States Attorney Nadine Pellegrini and upon Chief Pretrial Services Officer John R. Riley by delivery on November 8, 2005.

/s/ Oscar Cruz, Jr.
Oscar Cruz, Jr.

# EXHIBIT
# A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CRIMINAL NO.    CR04-10377 NG

### UNITED STATES OF AMERICA

V.

### FREDY ZAPATA-SOTO

### ORDER ON DETENTION
December 29, 2004

ALEXANDER, U.S.M.J.

The defendant Fredy Zapata-Soto, appeared before this Court on December 16, 2004, pursuant to an indictment charging him with a violation of 8 U.S.C. § 1326 (a) (illegal re-entry by deported alien). The government was represented by Assistant United States Attorney Nadine Pellegrini and the defendant was represented by attorneyMiriam Conrad.

At the hearing, the defendant waived his right to a detention hearing and consented to an order of detention. This Court hereby DETAINS the defendant pursuant to 18 U.S.C. §3142 (e) and remands the defendant to the custody of the United States Marshal pending trial.

SO ORDERED.

/S/ Joyce London Alexander_____
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT B

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
BOSTON, MASSACHUSETTS
File A29-857-400

In the Matter of:
                                        In Deportation Proceedings

    ZAPATA-SOTO, FREDY ANTONIO
        Respondent

CHARGE(S): 241(a)(02)
APPLICATION(S):

On behalf of the Respondent:        On behalf of the Service

                                    RICHARD BUYNISKI

        DECISION OF THE IMMIGRATION JUDGE

It is charged in the Order to Show Cause that the respondent is a
native and citizen of
who entered the United States on or about _____8-6-87_____ and
is deportable under Section 241(a)(02) of the
Act.  The Order to Show Cause was served upon the respondent.  This
Order to Show Cause contained a warning that a failure to attend the
hearing at the time and place designated may result in a determina-
tion being made by the Immigration Judge in the respondent's
absence.  The respondent was duly notified of the time and place
of the hearing, but without reasonable cause failed to appear on
04/02/91.

Section 242(b) of the Act, 8 U.S.C. 1252(b),provides inter alia that
the Immigration Judge shall have the power to conduct in absentia
hearings, "If any alien has been given a reasonable opportunity to
be present at a proceeding under this section, and without
reasonable cause fails or refuses to attend....the (Immigration
Judge) may proceed to a determination in like manner as if the alien
were present." The Supreme Court in INS v. Lopez-Mendoza, 104 S. Ct.
3479 (1984) stated, "The respondent must be given a reasonable
opportunity to be present at the proceeding, but if the respondent
fails to avail himself of the opportunity, the hearing may proceed
in his absence."  See also Matter of Charles, 16 I&N Dec. 241
(BIA 1971); Matter of Jean, 17 I&N Dec. 100 (BIA 1979); Matter of
Patel, I.D. 2993 (BIA 1985); and Matter of Perez, I.D. 3025
(BIA 1987).

Since respondent failed to appear or show any reason for such
failure to appear, deportation proceedings were held in absentia.
The Immigration and Naturalization Service presented Form I-213,
Record of Deportable Alien/passport/affidavit/other* as evidence
that the respondent is a native and citizen of the country stated
in the Order to Show Cause and is deportable on the charge set forth
in the Order to Show Cause.  I find that deportability as been

SLM

098

established by evidence which is clear, convincing and unequivocal. Woodby v. INS, 385 U.S. 276 (1966), 8 C.F.R. 242.14(a).

Respondent is not present to establish eligibility for any relief from deportation and therefore will be ordered deported to the country of his citizenship.
ORDER: IT IS ORDERED that respondent be deported from the United States to DOMINICAN REPUBLIC on the
charge(s) contained in the Order to Show Cause.

Date: 04/03/91

THOMAS M. RAGNO
Immigration Judge                        IU

099

# EXHIBIT C

<pre>
1                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
2
                                        Criminal No.
3                                       04-10191-WGY

4
     * * * * * * * * * * * * * * * *
5                                    *
     UNITED STATES OF AMERICA        *
6                                    *
     v.                              *   PRETRIAL CONFERENCE
7                                    *   and DETENTION REVIEW
     RODAS ALVARADO                  *
8    * * * * * * * * * * * * * * * *

9

10
                 BEFORE:  The Honorable William G. Young,
11                              District Judge

12

13

14   APPEARANCES:

15          JAMES F. LANG, Assistant United States Attorney,
         1 Courthouse Way, Suite 9200, Boston, Massachusetts
16       02210, on behalf of the Government

17
            FEDERAL DEFENDERS OFFICE (By Miriam Conrad, Esq.)
18       408 Atlantic Avenue, 3rd Floor, Boston, Massachusetts
         02210, on behalf of the Defendant
19

20          DEBORAH HUACUJA, Court Interpreter

21

22

23
                                        1 Courthouse Way
24                                      Boston, Massachusetts

25                                      July 22, 2004
</pre>

1         THE CLERK:  Calling Criminal Action 04-10191, the

2    United States v. Rodas Alvarado.

3         THE COURT:  Now, I'm very sensitive that the

4    defendant is not present here in court, but there's certain

5    things we can do in his absence and when we get any

6    discussion of his liberty I'll defer it until he's present.

7         One thing we can do is swear the interpreter.

8         THE COURT INTERPRETER:  Good morning, your Honor.

9         THE COURT:  And we're ready.  Good morning, and

10   thank you for attending on this session of the Court.

11        THE CLERK:  Please raise your right hand.

12        Do you solemnly swear that you will well and truly

13   interpret between the Court and the Defendant at the bar

14   the issues now pending, so help you God?

15        THE COURT INTERPRETER:  Yes, I do.

16        THE COURT:  The second thing we can do is talk

17   scheduling, apart from review of detention, because in the

18   initial scheduling conference we do that without the

19   defendant and it makes sense.  I know you're -- would

20   counsel identify themselves, forgive me.

21        MR. LANG:  Yes, your Honor.  James Lang for the

22   government.

23        MS. CONRAD:  Good morning, your Honor.  Miriam

24   Conrad for the defendant.  I just want to express my

25   gratitude to Ms. Smith, to the Court and Mr. Lang and Ms.

1    Huacuja for arranging for the schedule on very short

2    notice.

3            THE COURT:  I appreciate it.

4            In terms of the record, I've read Magistrate Judge

5    Cohen's detention order, Ms. Conrad's motion for review,

6    I've listened to the CD of the detention hearing.

7            She's going to be pushing for a prompt trial.  I'm

8    hoping to take some time in August.  That would be the 13th

9    of September.  It seems a rather, in terms of the offenses

10    a rather straightforward case.

11            Is the government all right with that?

12            MR. LANG:  I presume so, your Honor.  Obviously, I

13    haven't had the opportunity to confer with Ms. Pellegrini,

14    but that seems like a reasonable amount of time.

15            THE COURT:  We'll go forward on that presumption.

16            And, Ms. Conrad, I mean one good thing about

17    blocking these things out they give some substance to the

18    arguments we'll have about detention.  That seems to be the

19    best I could do.

20            MS. CONRAD:  Well, your Honor -- and I appreciate

21    that and that is, comparatively speaking, a quick trial

22    date.  My concern with respect to that trial date is when

23    I'm going to receive the discovery that I need to be

24    prepared for that trial date.

25            THE COURT:  Well, maybe so.  But it seems to me

1    you've got to figure which horse you're going to ride.

2            MS. CONRAD:  Well, I --

3            THE COURT:  On the one hand you're saying we have

4    to go to trial right away because otherwise he'll be

5    detained longer than he could be sentenced.  And, I mean,

6    I'm not going to be whipsawed on the thing.

7            MS. CONRAD:  Oh, no, I don't intend that at all,

8    your Honor.  What I intend -- we would like the Court to do

9    is order the government to provide me with the discovery

10   next week so I have sufficient time.

11           THE COURT:  Well, trial date first, then we'll

12   work back.

13           (Whereupon Mr. Alvarado entered the courtroom.)

14           THE COURT:  So assuming you get the discovery,

15   September 13th isn't a bad trial date.

16           MS. CONRAD:  That's fine.

17           THE COURT:  Now, Mr. Alvarado is present now in

18   court and the interpreter will pick up.

19           But let's stick on that course.  The case is

20   tentatively scheduled for trial now to impanel on Tuesday,

21   the 13th -- on Monday, the 13th of September.  I

22   tentatively -- I'm going to order that discovery be

23   produced, this is the 22nd, I'm going to order the

24   discovery be produced by Monday, the 2nd of August.

25           Now, I'm here Tuesday, the 3rd of August.  That's

1    the Court meeting.  If you have some problem, Ms. Conrad, I

2    want to hear about it on Tuesday, the 3rd of August.

3            Now, while I may be in on other days, I've got a

4    trip planned for early September.  Tentatively I'm going to

5    schedule the filing of substantive motions for Monday, the

6    23rd of August, and we'll move on to the trial thereafter.

7            Any problem with any of those dates?

8            MS. CONRAD:  No, your Honor.

9            THE COURT:  All right.  And Mr. Lang, again

10   tentatively, and I'll hear Ms. Pellegrini, I'm here through

11   the end of next week, if this doesn't work out for

12   scheduling I'm sure she can be back, and Ms. Conrad will

13   accommodate you, and Ms. Pellegrini and Ms. Conrad and I

14   can work out the dates.

15           MR. LANG:  My only question, your Honor, is, not

16   being familiar with the case, I'm not sure what the

17   discovery order encompasses.  I don't know if so-called

18   automatic discovery has already been provided and whether

19   we're talking about Jencks or 21 day material.  I don't

20   know what we're talking about.

21           THE COURT:  We're not talking about Jencks or 21

22   day -- I'll make it clear.  I'm not talking about that.

23           MR. LANG:  Okay.

24           THE COURT:  Because that I expect to be done

25   automatically working back now --

1          MR. LANG:  Understood.

2          THE COURT:  -- from the September 13th trial date.

3          MR. LANG:  That's fine.

4          THE COURT:  And I exclude the time between now and

5    September 23rd in the interests of justice.

6          Now, I guess we're ready to consider a review of

7    Magistrate Judge Cohen's detention order.  I have a

8    question.  Do we know whether there is a detainer lodged by

9    INS?

10         MR. LANG:  I'm told there is, your Honor.

11         THE COURT:  There is?

12         MR. LANG:  Yes.

13         THE COURT:  Well, I mean, to cut to the chase, I

14   take a somewhat different tack here.  And I mean no

15   disrespect certainly to Magistrate Judge Cohen, nor, and

16   equally significant, to the Office of the United States

17   Attorney and the Department of Justice.  But if they've got

18   a detainer on him and I were to release him to home

19   confinement, electronic bracelet, he won't go there, he'll

20   be released to the detainer.  Then INS, Ms. Conrad

21   expresses confidence, but she frequently does, and I praise

22   her for that, she expresses confidence that they in their

23   determination will set conditions of recognizance to be

24   responsive to their orders.  And I have to say, with a zero

25   to six month potential sentence after trial in this

1   proceeding, my instinct is to be satisfied with that.  If

2   they're sufficiently satisfied that they can keep tabs on

3   him, and I have, if they release him, of course, then my

4   electronic monitoring is all in place, I think I'd be

5   satisfied with that.  If they don't release him, I have

6   nothing to say about that, and I want to be clear on that

7   with Ms. Conrad.  I'm not going to be reviewing

8   determinations of the INS.  In fact, just the reverse.  I

9   would say two independent entities other than me,

10  Magistrate Judge Cohen and the INS, have said hold him, it

11  would be a very odd thing if I didn't hold him, especially

12  because I'm going to bend over backwards now to get this

13  case to resolution as promptly as I can.

14       What am I missing in the balance of matters there?

15       MR. LANG:  I think two things from the

16  government's perspective, your Honor.  One is that there's

17  a substantial likelihood that ICE will not release him if

18  he goes into their administrative custody.

19       THE COURT:  And I guess I'm saying, but I want to

20  hear Ms. Conrad on it, I'm fine with that.

21       MR. LANG:  The problem from the prosecutor's

22  perspective is that he will be deported before he stands to

23  answer these charges if that occurs.  That's the

24  likelihood.  Because he's under an existing or reinstated

25  order of deportation right now, and they have tremendous

1    resource issues so they have people under orders of

2    deportation and they are moving them out.  So, that's --

3            THE COURT:  Why -- again, I understand the

4    theoretic concern.  The Department of Justice, invoking

5    proper procedures, has determined to vindicate the

6    interests of the people of the United States with a

7    criminal prosecution.  Now another agency of government,

8    not in the Department of Justice, may frustrate that by

9    getting him out of the country.

10            Can't you work that out with INS?

11            MR. LANG:  Historically, no, your Honor.  We've

12    actually made specific requests in the past not to deport

13    people so they could stand to answer charges in this Court

14    and had them deported right out from under us as Judge

15    Cohen indicated in one of his orders, in his order in this

16    case.

17            THE COURT:  All right, that's one issue.  What's

18    the other issue?

19            MR. LANG:  The second issue is that if the

20    defendant is released from administrative custody by ICE on

21    conditions notwithstanding their judgment that he is a

22    suitable risk for that, given that he is under an order of

23    deportation he has entered this country illegally after

24    prior deportation and obviously has demonstrated a strong

25    vested interest in remaining in this country, I would

1    suggest to your Honor that he does have an incentive to

2    abscond to avoid what looks like certain deportation.  And

3    so in that circumstance, your Honor, we think that

4    conditional release is not appropriate.

5            THE COURT:  Thank you.

6            All right.  Ms. Conrad, Mr. Lang properly frames

7    the issue.  My initial reaction is the same with respect to

8    problems between two agencies of the Executive, the

9    Department of Justice and the ICE now, it seems that those

10   can be resolved ultimately by the President.  He can figure

11   out how he wants the Executive to operate.  So, I'm not too

12   troubled by the fact that if INS decides to deport him it

13   frustrates the prosecution.  The reverse happens often

14   enough.  They deport someone where the person claims to

15   have rights that will be frustrated if they're deported and

16   they're seeking to vindicate those rights under the laws of

17   the United States.  So I'm not too troubled by that.

18           Risk of flight, that is a very real concern.  But

19   I think conditions can be framed.  I'm thinking of

20   significant conditions, electronic bracelet, I'm satisfied

21   with this third-party custodian, curfew, limited reasons

22   why he's out of the, out of that place of residence.  That

23   said, if they don't release him, ICE doesn't release him,

24   nothing, and this is where I could be making a mistake,

25   there's always places I could make a mistake, but I don't

1    want anything I say here today that I released him as any

2    indication to ICE that they should, ought, may release him.

3    I don't think I can do any better than state it on the

4    record.

5        I face a pragmatic situation.  I fully respect the

6    decision of Magistrate Judge Cohen.  And I'm driven

7    primarily by the fact that these so-called sentencing

8    guidelines, and indeed now the Constitution of the United

9    States, say that if this man avails himself of all of the

10   rights which are his rights, the maximum sentence he faces

11   is six months' imprisonment.  Liberty is very dear.  And I

12   can't get to it until the 13th of September.

13       So, I didn't give you a chance to argue, but

14   that's the most you're getting here, but that's, you're

15   okay with that?

16       MS. CONRAD:  I am absolutely fine with that, your

17   Honor.  I do not expect nor do I ask the Court to make any

18   judgments or recommendation to Immigration as to what they

19   will do.  And not to belabor the point, but this is an

20   Immigration investigative prosecution.  And it's my

21   assumption that if they want to keep him for prosecution

22   they will not deport him.  But if they choose to deport him

23   then that's a decision they're making.

24       THE COURT:  Well, you say they're making.  You

25   know, I don't lightly go over Mr. Lang's point that it is

1    the Office of the United States Attorney for the District

2    of Massachusetts acting -- this is an indictment, isn't it?

3         MS. CONRAD:  Yes, it is.

4         THE COURT:  -- acting after a grand jury of the

5    people of this district have decided.  The man should be

6    prosecuted.  I don't lightly set that aside.  If there were

7    a longer, a longer sentence provided for under the

8    constitution and the, the rules of, as Justice Scalia says,

9    this junior varsity congress, the so-called sentencing

10   commission, my balance would be different.

11        MS. CONRAD:  Understood, your Honor.

12        THE COURT:  Liberty is the primary concern to the

13   Court here.  Very well.

14        MS. CONRAD:  Your Honor, Ms. Rodriguez is present

15   in court today actually with her mother and her niece.  So,

16   she is the third, proposed third-party custodian.  I just

17   want the Court to be aware that she is here.

18        THE COURT:  And if she could stand up for a minute

19   if you don't mind.

20        Ma'am?

21        MS. CONRAD:  Would you come forward.

22        THE COURT:  I don't -- when we -- I don't know

23   that this will happen because there is this warrant to hold

24   Mr. Alvarado, and I'm not interfering with that.  But if

25   that warrant were handled in such a way that he could be at

1    liberty, Ms. Conrad on Mr. Alvarado's behalf has offered

2    you and said you were willing to be a third-party

3    custodian.

4         Now, you do not become liable to the Court for

5    doing that.  But I want you to know that in a very real

6    sense I'm trusting you to cooperate in obeying the orders

7    of the Court which will require Mr. Alvarado to be at your

8    place of residence any time he's not working.  And that

9    cooperation, notwithstanding your relationship with him,

10   means that I expect you to cooperate with the probation

11   officers and if he doesn't show up tell us what you know.

12        Do you understand that?

13        MS. RODRIGUEZ:  Yes.

14        THE COURT:  And are you willing to do that?

15        MS. RODRIGUEZ:  Yes.

16        THE COURT:  All right.  Now, before I enter an

17   order, Mr. Lang?

18        MR. LANG:  Your Honor, I would be remiss if I

19   didn't make one point in response to you placing

20   substantial emphasis on the length of time that the

21   defendant's facing.

22        By the government's calculation, on the three

23   counts of harboring an alien, the upper end of the

24   guidelines would be 16 months, not six months.  That would

25   be a ten to 16 month guideline range.  I don't know if that

1    affects your analysis but those are the numbers we have.

2          THE COURT:  You're quite right to mention it.  I'm

3    going to adhere to my analysis.  But I accept what you say.

4          Very well.  Upon review, Mr. Alvarado is admitted

5    to bail on the following conditions.  Assuming that the

6    detainer presently lodged against him is resolved in some

7    fashion by the appropriate agency, he then is admitted to

8    pretrial recognizance with home confinement in the custody

9    of the third-party custodian.  He is to wear an electronic

10   bracelet.

11         What are his hours of employment, Ms. Conrad?

12         (Whereupon Mr. Alvarado and Ms. Conrad conferred.)

13         MR. LANG:  Your Honor?

14         THE COURT:  Yes.  I'll hear you.

15         MR. LANG:  This defendant has no work

16   authorization.  I don't believe he can lawfully work.  He

17   was illegally working before.

18         THE COURT:  Yes, there's something to that.  I

19   think maybe we'll just leave him in home confinement.

20         He is, he is confined on electronic bracelet to

21   the place of residence of the third-party custodian.  He

22   may leave that place of residence for the following reasons

23   and no others.

24         He may leave during the hours between 9:00 a.m.

25   and 5:00 p.m. to attend scheduled medical appointments.  He

1    may leave to attend religious services.  And for no other

2    reason.  No, he may also leave to go and come to his

3    attorney's office to consult with his attorney or to

4    respond to visits, one, to the Pretrial Services office, or

5    be responsive to any proceedings before -- I hate to use

6    acronyms.  What does ICE stand for?

7            MR. LANG:  It's Immigration and Customs

8    Enforcement, your Honor.  The Bureau of Immigration and

9    Customs Enforcement.

10           THE COURT:  Yes, he may of course present himself

11    at proceedings before Immigration and Customs Enforcement,

12    and he may go to an attorney's office to consult about

13    those proceedings.  For all other purposes he stays at that

14    residence.

15           Before we suspend, is there anything else?

16           (Whereupon the Court and the Clerk conferred.)

17           THE COURT:  All the standard additional conditions

18    of release -- well, let me go over them.

19           He's to refrain from possessing a firearm,

20    destructive device, or other dangerous weapon.  You're

21    refrained from any excessive use of alcohol, use or

22    unlawful possession of a narcotic drug or other controlled

23    substance.  He's not to seek to obtain a passport from this

24    or any other country.

25           All right.  Is there anything else before I remand

1    him to the custody of the marshals subject to the detainer

2    of ICE?

3            MS. CONRAD:  Your Honor, I just wanted to clarify

4    one point.  I infer that the condition, the exception from

5    house arrest permits him to meet with his attorney referred

6    to by myself, but he also may consult with an immigration

7    attorney.  I just would want him to be able to leave the

8    home for that purpose, with notice to Pretrial Services of

9    course.

10           THE COURT:  I had thought it was that broad.

11           MS. CONRAD:  Okay.  I just wanted to be clear.

12           THE COURT:  And Pretrial.  And you will

13   understand, I expect that the name of an immigration

14   attorney and address will be furnished to Pretrial before

15   he leaves for any such purpose.

16           MS. CONRAD:  Certainly.

17           THE COURT:  So we have a limited group of people

18   that he --

19           MS. CONRAD:  Certainly.

20           THE COURT:  -- goes to.

21           (Whereupon the Court and the Clerk conferred.)

22           THE COURT:  All right, that's the order of the

23   Court.  And we'll stand in recess.

24           MR. LANG:  Thank you, your Honor.

25           THE COURT:  Thank you.

1          THE CLERK:  All rise.  The Court is in recess.

2          (Whereupon the matter concluded.)

3

4

5                    **C E R T I F I C A T E**

6

7          I, Donald E. Womack, do hereby certify that the

8     above proceedings were reported by me stenographically and

9     this transcript represents a true and accurate

10    transcription of said proceedings.

11

12

13

14

15    _____

16                    DONALD E. WOMACK
                  Official Court Reporter
                      P.O. Box 51062
17           Boston, Massachusetts 02205-1062
                   womack@megatran.com

18

19

20

21

22

23

24

25